IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DARREN WAYNE QUIMBY,                      Civil No. 07-3037-CL

        Plaintiff,            REPORT AND RECOMMENDATION

   v.

DUTCH MINING, L.L.C.,

        Defendant.

CLARKE, Magistrate Judge:

    This is a civil action brought by plaintiff Darren Quimby against his former employer defendant Dutch Mining, L.L.C., alleging claims for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and state law claims for unjust enrichment and violations of Oregon's wage and hours laws, Oregon Revised Statutes (ORS) Chapter 653. Plaintiff seeks economic damages, penalties, costs, interest, and attorney fees.  Before the Court are defendant's Motion for Partial Summary Judgment (#36) and plaintiff's Motion for Partial Summary Judgment (#54).

### I. FACTS

    Considering only those facts relevant to the Court's ruling on the motions, a review of the record reveals the

following:

Quimby was employed by Dutch from January 2005 to March 2007. (Quimby Decl. ¶ 2.)  Plaintiff was a Josephine County resident while employed by Dutch.  Dutch's place of business is in Josephine County.

Quimby and Dutch had a verbal employment agreement. (Engel Aff. ¶ 3.)  It was Dutch's employee Mr. Patrick Engel's understanding that the agreement included the terms of Quimby's compensation.  (*Id*.)  Quimby agrees that a verbal employment agreement existed.  (Quimby Decl. ¶ 6)

Mr. Engel claims that Quimby was paid a salary of more than $455 per week.  (Engel Aff. ¶ 4.)

From January 2005 until  November 2005, Quimby worked as a part time consultant and was not paid on any formal basis.  This related to an ongoing workers compensation claim Quimby had from his prior employment. (Engel Dep. at P. 10-11.) In November 2005, Quimby was given the title Mine Superintendent Trainee and was paid $35 per hour for a 40 hour week and $91 per day per diem.  (Engel Dep. at P. 11.) All Dutch workers received per diem.  (Engel Dep. at P. 11.)

In December 2005, Quimby was presented a written job offer by Dutch providing a $36,000 per year salary.  (Quimby Decl. Ex. A.)  Quimby did not accept the offer.  (Quimby Decl. ¶ 10.)

REPORT AND RECOMMENDATION - 2

In January 2006, Quimby drafted a document containing the terms Quimby thought constituted the employment agreement between the parties; the terms of the agreement included being paid $35.00 per hour. (Quimby Dep. at P. 74-75; Quimby Dep. Ex. 29; Quimby Decl. ¶ 11.)  Quimby claims he presented the document to, among others, General Manager Engel. (Quimby Decl. ¶ 11.)

Mr. Engel does not recall ever seeing the document, but admits that $35 per hour plus per diem was agreed.  (Engel Dep. at P. 24.)  Mr. Engel testified that Quimby would be paid for the hours he worked "which was mostly 40 hours, that was the agreement."  (Id. at P. 19.)

Quimby has presented pay stubs and other payroll records showing his pay based on an hourly rate and the number of hours, often more than 40 hours.  (Post Decl. Ex. C P. 1-75.)

Ed Hunter and Cecil Ford were hired to take over Quimby's duties. (Engel Dep. at P. 13.)  Mr. Hunter was hired as Mine Manager around August 1, 2006.  (Hunter Decl. ¶ 1.)  Mr. Ford was hired around September 2006.  (Ford Dep. at P. 7.)  Mr. Hunter and Mr. Ford were in charge of the mining operation and controlled Quimby's rate of pay. (Engel Dep. at P. 13.)  Mr. Ford was Quimby's supervisor. (Ford Dep. at P. 17.)  Hunter recommended to General Manager Engel

REPORT AND RECOMMENDATION - 3

that Quimby be changed from hourly to a salary. (Hunter Decl. ¶ 3.)

Quimby was paid a salary for a two week period in October 2006. (Post Decl. Ex. C P. 42-44.) The amount was $1384.62 per week, (Id.); however, the remainder of the time he was paid an hourly wage, (Post Decl. Ex. C P. 1-41, 45-75.) His pay was reduced to $30 per hour. (Quimby Dep. at P. 75; Hunter Decl. ¶¶ 2-6.) Quimby, from January 30, 2006, to his termination, requested to be paid on a salary basis; however, Dutch refused to do so. (Quimby Dep. at P. 76.) Except for two weeks, there was never an agreement between Quimby and Dutch to pay Quimby a predetermined amount each week. (Quimby Decl. ¶ 8.)

Quimby was typically paid a per diem of $91.00 per ten hours. (Quimby Dep. at P. 87.) If Quimby did not work a full ten hour shift, the per diem would be adjusted and, if Quimby worked more than a ten hour shift, he did not receive more per diem. (Id. at P. 90-91.)

Mr. Engel considered Quimby's rate of pay "more like a salary" (Engel Dep. at P. 10), and was under the assumption that Quimby was paid for 40 hours per week plus per diem, (Id. at P. 28.) According to Mr. Engel, other people with knowledge of Quimby's rate of pay included the president of the company, Eddie Dienhart, and the bookkeeper, Janice

REPORT AND RECOMMENDATION - 4

White. (Id. at P. 12-13.)

Mr. Dienhart does not know what Quimby's rate of pay was; he thought Quimby was paid on a salary basis and was making somewhere between $4,000 and $8,000 per month. (Dienhart Dep. at P. 15.) Although Mr. Dienhart claims Quimby was paid a salary, (Id. at P. 18), Mr. Dienhart cannot explain why Quimby's paychecks reflected an hourly rate of pay instead of a salary rate, (Id. at P. 15.) According to Mr. Dienhart, "everything was done to [Quimby's] wishes, the way he liked it." (Id.)

Janice White worked for Dutch from July 1996 through the first part of 2003 and again from March 2006 through July 2007 as the accounting office manager and bookkeeper. (White Dep. at P. 7-8.) Her duties included handling anything administrative or relating to accounting, including issuing paychecks. (Id. at P. 9.) Ms. White has over 20 years of accounting and payroll experience. (Id. at P. 13.)

According to Ms. White, Quimby was paid on an hourly basis for a period of time and on a salary basis for a period of time. (Id. at P. 10-11.) If an employee was paid on a salary basis, it would be reflected on his paycheck that it was salary and list a certain amount. (Id. at P. 11.) Quimby received only two pay checks which stated that

REPORT AND RECOMMENDATION - 5

he was paid on a salary basis. (Quimby Dep. at P. 75; Post Decl. Ex. C P. 42-44.)  In other pay periods, Quimby's paychecks reflect that he was paid "Regular" rather than "Salary," and contained a quantity of hours and an hourly rate for the period.  (Id. at P. 1-41, P. 45-75.)

## II. **LEGAL STANDARDS**

Pursuant to Rule 56(c), summary judgment "should be rendered, if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002).  The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact.  Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002).

The moving party must carry the initial burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact.  Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  In assessing whether a party has met its burden, the court views the evidence in the light most

favorable to the non-moving party.  Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995).  All reasonable inferences are drawn in favor of the non-movant.  Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986).  Summary judgment should be granted for the movant, if appropriate, in the absence of any significant probative evidence tending to support the opposing party's theory of the case.  Fed. R. Civ. P. 56(e); THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968).  Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial.  Devereaux, 263 F.3d at 1076.

//

REPORT AND RECOMMENDATION - 7

### III. <u>DISCUSSION</u>

Defendant moves for partial summary judgment on plaintiff's claims for overtime compensation under federal and state law and for unjust enrichment.  Defendant contends plaintiff is not entitled to overtime as he was an executive under the Fair Labor Standards Act (FLSA).  Defendant also contends that plaintiff cannot  recover under a quasi-contract theory because an actual contract existed.

Plaintiff moves for partial summary judgment contending that he was not paid on a salary basis under state or federal law and is not exempt from the overtime provisions of state and federal law.

For the reasons set forth below, the Court denies defendant's Motion for Partial Summary Judgment and grants plaintiff's Motion for Partial Summary Judgment.

**Overtime Compensation - Executive Exemption**

The FLSA and Oregon's wage and hour laws require employers to pay employees, who work more than 40 hours per week, overtime compensation.  29 U.S.C. § 207(a); ORS 653.261; OAR 839-020-0030(1).  Overtime need not be specifically authorized by an employer for an employee to be entitled to overtime pay.  <u>Reich v. Stewart</u>, 121 F.3d 400, 406-07 (8th Cir. 1997).  If the employer knows or has reason to believe the employee is continuing to work, the duties

are an integral and indispensable part of the employer's principal work activity, and the employer doesn't want the work to be done, the employer has a duty to see that the work is not performed.  Id.  The employer cannot accept the benefits without including those hours in the employee's weekly total for purposes of overtime compensation.  Id.

The FLSA and Oregon's wage and hour laws exempt employees from overtime requirements if the employees are employed "in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1); see ORS 653.020(3).  Exemptions to the FLSA are narrowly construed, and the employer bears the burden of proving that the employee fits "plainly and unmistakenly" within the exemptions terms.  Serv. Employees Int'l Union, Local 102 v. County of San Diego, 60 F.3d 1346, 1350 (9th Cir. 1994) (citation omitted).  To qualify for this exemption, an employee must meet **both** the "salary test" and the "duties test."  Id.; ORS 653.020(3).  Failure to satisfy the salary test alone will result in loss of the exemption. Serv. Employees, 60 F.3d at 1350.

Under federal regulations:

> An employee will be considered to be paid on a "salary basis" . . . if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to

REPORT AND RECOMMENDATION - 9

>       reduction because of variations in the quality or
>       quantity of the work performed.  Subject to the
>       exceptions provided in paragraph (b) of this
>       section, an exempt employee must receive the full
>       salary for any week in which the employee performs
>       any work without regard to the number of days or
>       hours worked.

29 C.F.R. § 541.602(a).

　　This regulation allows employers to make deductions when an employee is absent from work for a day or more for personal reasons and "for absences of one or more full days occasioned by sickness or disability . . . if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness and disability."  29 C.F.R. § 541.602(b)(1)(2).

　　Under Oregon's regulations, salary is defined as "a predetermined amount constituting all or part of the employee's compensation paid for each pay period of one week or longer . . . ."  OAR 839-020-0004(29).  The term "Salary basis" means, generally, a "salary" "which is not subject to deduction because of lack of work for part of a work week."  OAR 839-020-0004(30).

　　Plaintiff and defendant both admit they had a verbal employment agreement including compensation.  They disagree on the terms.  The Court has examined the facts as to what actually occurred.

REPORT AND RECOMMENDATION - 10

Plaintiff has presented detailed facts showing that, except for two weeks in October 2006 (where the pay stubs clearly show "Salary"), he was, from November 2005 to March 2007, paid hourly and received paychecks in amounts that varied depending on the number of hours worked, and was only paid the full $91 per diem if he worked a full 10 hour shift.  This evidence includes plaintiff's own testimony and declaration; the declaration of former defendant's Mine Manager, Ed Hunter; the testimony of defendant's bookkeeper, Janice White; and, most specifically, plaintiff's pay stubs consistently showing plaintiff's pay status as "Regular" including the hours and hourly rate with resulting pay, except for two weeks that list "Salary" as his pay status; and other payroll records.

Defendant in large part relies on the affidavit and testimony of General Manager Patrick Engel and the testimony of defendant's owner, Ewald Dienhart.  In his affidavit, Mr. Engel states,  "Mr. Quimby was paid a salary of more than $455.00 per week."  (Engel Aff. ¶ 4.)   Federal law requires a minimum pay of $455.00 per week to allow an employer to be exempt from overtime requirements. 29 C.F.R. § 541.100(a).  Mr. Engel testified in his deposition as follows:

> Q  All right.  And is it correct that he was
> – Dutch Mining began paying him an hourly rate in
> approximately November of 2005?
> A  Well, I see it more like a salary.

REPORT AND RECOMMENDATION - 11

>          Q   So they were paying him some type of
>     compensation?
>          A   Oh, yeah, yeah.
>     . . . .
>          Q   Did you have any type of employment
>     contract, a written contract, with Mr. Quimby
>     explaining his compensation?
>          A   Not that I can recall, really finalized,
>     no.  It was more verbal.
>          Q   And what, beginning and the end of 2005
>     [sic] or the beginning of 2006, what was his
>     compensation?  How was he paid?
>          A   He was paid $35 an hour for the whole
>     week, 40-hour weeks.
>          Q   All right.  And that's regardless of how
>     many –
>          A   And he was paid $91.00 kind of an extra
>     for leading the show, so to speak.
>          Q   Is that per diem?
>          A   We call it a per diem, yeah.
>          Q   Did every employee get a per diem?
>          A   Yeah.

(Engel Dep. at P. 10-11.)

The owner of defendant Dutch Mining, Ewald Dienhart, testified in deposition:  "Absolutely he [Quimby] was on a salary basis."  (Dienhart Dep. at P. 15.)  However, Mr. Dienhart, who referred to Quimby as "my salary man" could not offer any specifics on the  amount of salary. (*Id*. at P. 18.)

Defendant offers no documents to support the payment of salary to plaintiff.  Federal Rules of Civil Procedure 56(e)(2) provides:

> ***Opposing Party's Obligation to Respond.***  When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavit or as

REPORT AND RECOMMENDATION - 12

>  otherwise provided in this rule-set out *specific facts showing a genuine issue for trial*. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

(Emphasis added.) The issue is whether defendants have presented specific facts to create a genuine issue for trial that plaintiff was paid on a salary basis. The United States Supreme Court in <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888 (1990), stated:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint.

The Ninth Circuit has found that the submission of conclusory and speculative affidavits that fail to set forth specific facts are insufficient to meet a nonmovant's burden in opposing a summary judgment motion, stating: "'If, indeed, evidence was available to underpin (the) conclusory statement, Rule 56 required (the party opposing summary judgment) to come forward with it.'" <u>Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.</u>, 594 F.2d 730, 738 (9th Cir. 1979) (quoting <u>Donnelly v. Guion</u>, 467 F.2d 290, 293 (2d Cir. 1972)); <u>Shane v. Greyhound Lines, Inc.</u>, 868 F.2d 1057, 1061 (9th Cir. 1989) ("Because the affidavit contains only

REPORT AND RECOMMENDATION - 13

conclusory allegations, not backed up by statements of fact, it cannot defeat a motion for summary judgment."); cf. <u>United States v. Shumway</u>, 199 F.3d 1093, 1103-04 (9th Cir. 1999). The Court, in reviewing a motion for summary judgment, "is not compelled to give weight to an allegation that is incontrovertibly demonstrated to be false." <u>United States v. Various Slot Machs. on Guam</u>, 658 F.2d 697, 701 (9th Cir. 1981).

The Court in this case finds that defendant has not presented specific facts showing a genuine issue for trial as to whether plaintiff was paid on a salary basis and, therefore, denies defendant's Motion for Partial Summary Judgment. All of the facts presented show plaintiff was paid hourly. The Court has reviewed the evidence in the light most favorable to defendant. The broad conclusory statements by Mr. Engel and Mr. Dienhart offered by defendant, without specific facts or supporting documents, simply do not defeat plaintiffs' Motion for Partial Summary Judgment under Rule 56.

In its response to plaintiff's Motion for Partial Summary Judgment, defendant argues that the $91 per day per diem alone meets the salary test. Although creative, the Court finds that the payment of per diem for food and travel, which is adjusted based on the amount of hours

REPORT AND RECOMMENDATION - 14

worked in a day, does not satisfy the salary test. The payment of per diem does not meet the requirement under federal and state law that the amount paid be a predetermined amount not subject to reduction because of the quantity of work performed.

Because defendant has not shown that Quimby meets the salary test, the Court need not address the duties test. See <u>Serv. Employees</u>, 60 F.3d at 1350.

On this record, plaintiff is entitled to partial summary judgment as follows:

(1)  Because plaintiff was not paid on a "salary basis" as defined by 29 C.F.R. § 541.602(a), he was not exempt from the overtime provision of the FLSA;

(2)  Because plaintiff was not paid on a "salary basis" as defined by OAR 838-020-0004(30), he was not exempt from the overtime provisions of ORS 653.261 and OAR 839-020-0030; and

(3)  Because plaintiff was not exempt from the overtime provisions of the FLSA and Oregon wage and hour laws, rules, and regulations, plaintiff was entitled to overtime wages for all time he proves he worked in excess of 40 hours per week from November 2005 through March 2007, except for the two-week period of October 8, 2006, to October 21, 2006, when plaintiff was paid a salary, (Post Decl. Ex. C at P.

REPORT AND RECOMMENDATION - 15

42-44), and those pay periods when plaintiff was, in fact, paid overtime by defendant, (<u>see e.g.,</u> Post Decl. Ex. C at P. 52, 56, 62, 64, 68).

**Unjust Enrichment**

In general, "before there can be a valid contract, there must be a meeting of the minds as to all of its essential terms." <u>Vision Realty, Inc. v. Kohler</u>, 214 Or. App. 220, 225 (2007)(citing <u>Phillips v. Johnson</u>, 266 Or. 544, 555 (1973)).  Dutch did not present any evidence regarding whether there was a meeting of the minds on the essential terms of the contract.  Quimby presented evidence of what he alleges were the terms of the contract.  The Court finds that there are issues of fact regarding whether a contract existed between the parties and the terms of the contract.  Dutch is not entitled to summary judgment on Quimby's unjust enrichment claim.

## IV. <u>RECOMMENDATION</u>

Based on the foregoing, it is recommended that defendant's Motion for Partial Summary Judgment (#36) be denied and that plaintiff's Motion for Partial Summary Judgment (#54) be granted.

<u>*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*</u>.  Any

REPORT AND RECOMMENDATION - 16

notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.  _Objections to this Report and Recommendation, if any, are due by August 1, 2008.  If objections are filed, any responses to the objections are due 14 days after the objections are filed_.  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

          DATED this   __17__   day of July, 2008.


          ___/s/ Mark D. Clarke_____
          UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION - 17